UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
*Electronically Filed*

| | |
|---|---|
| K.R.M., A.B.W., M.L.K., J.H.D., M.A.M., K.M.C., M.A.E.M., and A.M.H.<br><br>Plaintiffs,<br><br>vs.<br><br>LARUE COUNTY SCHOOL DISTRICT,<br><br>and<br><br>STEPHEN KYLE GOODLETT,<br><br>Defendants. | CIVIL ACTION NO: 3:17-cv-578-DJH |

**DEFENDANT, LARUE COUNTY SCHOOL DISTRICT'S,
MOTION TO DISMISS PLAINTIFFS' CLAIMS**

Comes now the Defendant, LaRue County School District (hereinafter the "District"), by and through counsel, and moves this Honorable Court to dismiss the claims asserted by the Plaintiffs in the Complaint and Amended Complaint failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of this Motion to Dismiss, the District hereby states as follows:

**I.    INTRODUCTION**

In their Complaint,[1] Plaintiffs have alleged that LaRue County High School officials violated their rights to privacy when officials seized and, without their permission, searched the contents of their cell phones and then published personal information obtained from those cell

---

[1] This Motion will refer to the original Complaint filed by the Plaintiffs, as it substantively sets forth the Plaintiffs' claims and allegations and was adopted by Plaintiffs in their First Amended Complaint. However, this Motion seeks dismissal of *all* claims brought by *all* Plaintiffs, including those in the Complaint and First Amended Complaint.

phones, including but not limited to, nude and semi-nude photographs of the Plaintiffs on public internet sites.[2] Plaintiffs' Complaint against both the District and Defendant, Stephen Kyle Goodlett (hereinafter "Defendant Goodlett"), is misleading as it does not distinguish the legal duties of the District from the criminal conduct of Defendant Goodlett. Furthermore, the Complaint misstates that the Cell Phone/Media Device Policy (hereinafter the "Policy") allowed for a student's cell phone to be confiscated *and searched*. Nowhere in the Policy did the District permit or allow for a student's cell phone to be searched. Finally, the Court should not be distracted by Plaintiffs' attempt to assert that the District ratified or allowed Defendant Goodlett's criminal conduct by allegedly failing to develop and enforce adequate policies and procedures to prevent same. The District is entitled to immunity, cannot be vicariously liable for Defendant Goodlett's alleged conduct, and had no legal duty to implement policies to prevent the unforeseeable and criminal conduct of Defendant Goodlett. As set forth below, even accepting all of Plaintiffs' allegations as true, dismissal of the Complaint is required.

## II. MOTION TO DISMISS AND PLEADING STANDARDS

The District seeks dismissal of Plaintiffs' claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). In making such a motion, "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief."[3] Accordingly, a motion under Rule 12(b)(6) "tests the sufficiency of the plaintiff's claim for relief."[4] FRCP 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." However, to survive a motion to dismiss, the

---

[2] *See* Plaintiffs' Complaint, "Introduction and Nature of the Action. Many of the "facts" set forth in this Motion are taken from Plaintiffs' Complaint. The District denies the truth of many of the allegations set forth in the Complaint, but relies on them solely for the purpose of this Motion.
[3] *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (*citing Carver v. Bunch,* 946 F.2d 451, 454-55 (6th Cir. 1991)).
[4] *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001).

2

complaint "must contain either direct or inferential allegations" establishing each material element required for recovery under some actionable legal theory."[5]

When reviewing a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claim that would entitle relief."[6]  The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences."[7]  In other words, the facts that are pled must rise to the level of plausibility, not just possibility – "facts that are merely consistent with a defendant's liability…stop[ ] short of the line between possibility and plausibility."[8]  According to the Sixth Circuit, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]  Thus, the plaintiff must at least "provide the grounds of his entitlement to relief, [which] requires more than labels and conclusions[.]"[10]

As set forth in more detail below, even if all factual allegations in the Complaint are taken as true, Plaintiffs' claims cannot survive Defendant's Motion to Dismiss.

---

[5] *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (internal citation and quotation marks omitted).
[6] *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).
[7] *DirecTV, Inc.,* 487 F.3d at 476 (citation omitted).
[8] *Moore v. Zydus Pharms. (USA), Inc.*, 2017 U.S. Dist. LEXIS 160415, *5 (E. D. Ky. 2017) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2002) (internal quotations omitted)).
[9] *DirecTV, Inc.,* 487 F.3d at 476 (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).
[10] *Twombly*, 550 U.S. at 555.

### III.  ARGUMENT AND ANALYSIS

### a. The District did not violate the Fourth Amendment of the United States Constitution, 42 U.S.C. § 1983, or Article I, Section 10 of the Kentucky Constitution when Plaintiffs' cell phones were confiscated in compliance with the Policy.

The United States Supreme Court has long held that students have a legitimate expectation of privacy while at school, but that expectation must be balanced against the school's need to protect the learning environment.[11] Accordingly, many school districts throughout the country have been faced with ever-evolving issues created by increased availability and advancements in technology, namely "smartphones," and students' use of these devices throughout the school day. Clearly, the use of these devices during school hours can have an adverse impact on the learning environment. In Kentucky, KRS 158.165 mandates that school districts develop a policy to govern the use of cell phones (and other "personal telecommunications devices") by students while on school property. KRS 158.165, in relevant part, states as follows:

> (1) The board of education of each school district **shall** develop a policy regarding the possession and use of a personal telecommunications device by a student while on school property or while attending a school-sponsored or school-related activity on or off school property, and **shall** include the policy in the district's written standards of student conduct. A student who violates the policy **shall** be subject to discipline as provided by board policy. (Emphasis added).

Accordingly, the District was required to develop a policy much like the one at issue in this case. To that end, it is important to note that the Policy in effect at LaRue County School High School only permitted a student's cell phone to be *confiscated* if seen during school hours. Students at LaRue County High School and their parents were required to review the Policy and

---

[11] *New Jersey v. TLO*, 469 U.S. 325 (1985).

verify that they would comply with it each school year. This Policy in no way contemplated or allowed for school officials to *search* the content of a student's phone.

Many jurisdictions throughout the country have dealt with Fourth Amendment claims in the context of school officials confiscating phones and explicitly searching them. In this case, the Court should not even reach that analysis as: (1) the Policy permitting the confiscation of students' cell phones did not violate the Fourth Amendment of the United States Constitution or Article I, Section 10 of the Kentucky Constitution; and (2) Plaintiffs cannot prove that anyone other than Defendant Goodlett searched their cell phones, nor can they prove that any other District employee knew about Defendant Goodlett's illegal conduct.

A review of federal cases dealing with schools and cell phone policies throughout the country demonstrates that a policy allowing for the confiscation of a student's cell phone, not a search thereof, does not violate the Fourth Amendment of the United States Constitution.[12] The most applicable Kentucky case addressing the Fourth Amendment and students' cell phones is a case from the 6th Circuit Court of Appeals. In *G.C. v. Owensboro Public Schools*, the Court held that a Kentucky teacher should not have searched a student's text messages despite her concern about the student's suicidal tendencies and suspected drug use.[13] The dissent in this opinion appropriately points out as follows: "What happened here? G.C. violated school policy by using his cell phone during class. Under the terms of that policy, his phone was seized, an action that he does not contest."[14]

---

[12] *See e.g. J.W. v. DeSoto County School District*, 2010 WL 4394059, (N.D. Miss. 2013) (finding it reasonable for a school to not only confiscate, but also search the contents of a student's cell phone); *Klump v. Nazareth Area School District,* 425 F.Supp.2d 622 (E.D.Pa.2006) (finding that the defendant "was justified in seizing the cell phone, as plaintiff…. had violated the school's policy prohibiting use or display of cell phones during school hours"); *Herrera v. Santa Fe Pub. Sch.,* 792 F. Supp. 2d 1174, 1197 (D.N.M. 2011) (noting that school policy allowing security at proms and graduations to seize "distracting contraband" such as cell phones was reasonable); *Requa v. Kent Sch. Dist. No. 415,* 492 F. Supp. 2d 1272 (W. D. Wash. 2007)*; Laney v.* Farley, 501 F.3d 577 (6th Cir. 2007).
[13] *G.C. v. Owensboro Public School*, 711 F.3d 623 (6th Cir. 2013).
[14] *Id*. at 636.

The U.S. District Court for New Mexico similarly held that a school resource officer did not violate the Fourth Amendment by instructing school personnel to confiscate a student's cell phone.[15] Specifically the court stated: "It is certainly reasonable for a school offer to confiscate a student's cell phone, as required by school policy, when that cell phone is being used during the school day in violation of school rules."[16] Additionally, several state courts have even gone a step further and found school policies banning cell phones altogether lawful and allowing for confiscation of such phones if on school property. New York's appellate court upheld the constitutionality of a cell phone ban that was enforced with the random use of portable metal detectors that resulted in the confiscation of approximately 3,000 cell phones.[17] The Arkansas Supreme Court also ruled that a teacher and a principal who confiscated and retained a student's cell phone for two weeks pursuant to school policy did not violate the students' rights under state or federal law.[18]

Similarly, no party in this matter can dispute the constitutionality of the Policy itself. Plaintiffs' Complaint repeatedly alleges that students' cell phones were "searched…without the requisite suspicion and probable cause."[19] However, the Policy did not contemplate or permit *searches* of students' cell phones once confiscated. Admittedly, Plaintiffs' cell phones were "confiscated by school officials…pursuant to [the Policy] outlined in [the] student handbook."[20] Nowhere in Plaintiffs' Complaint is the constitutionality of the confiscation of Plaintiffs' cell phones disputed.

---

[15] *G.M. ex rel B.M. v. Casalduc*, 982 F. Supp. 2d 1235 (D. N.M. 2013).
[16] *Id*. at 373.
[17] *Price v. New York City Bd. of Educ*, 51 A.D.3d 277 (N.Y. App. Div. 1st Dept. 2008).
[18] *Koch v. Adams*, 2010 Ark.131 (Ark. 2010).
[19] Plaintiffs' Complaint, "Introduction and Nature of the Action." *See also*, ¶ 40.
[20] *Id*. at ¶ 21.

In Count I of Plaintiffs' Complaint, it is alleged that the District's "own policies resulted in violations of federal law and that school officials "unreasonably and unlawfully searched" the Plaintiffs' cell phones.[21] Count III of Plaintiffs' Complaint also alleges that the Policy violated the Plaintiffs' right to be "free from unreasonable search and seizure" under Article I, Section 10, of the Kentucky Constitution.[22] As distinguished above, the Policy in effect did not result in the violation of federal law or the Kentucky Constitution. Instead, without the knowledge of the District or any of the District's employees, Defendant Goodlett performed illegal searches of students' cell phones by downloading personal images from these phones to his own personal thumb drive using a personal device and posting them online from his personal computer. As discussed in more detail below, the District is entitled to immunity and cannot be liable for the unforeseeable criminal acts of Defendant Goodlett, and Plaintiffs cannot prove that anyone other than Defendant Goodlett was responsible for obtaining and publishing private images. Counts I and III of Plaintiffs' Complaint must be dismissed against the District as a matter of law.

### b. The Policy did not violate Title IX of the Educational Amendments of 1972.

In Count II of the Complaint, Plaintiffs allege that if they "had not been female students" they would not have been subjected to alleged "harassment and discriminatory acts of [Defendant Goodlett]."[23] They state that because they were females, they were "denied educational opportunities on the basis of sex" in violation of Title IX of the Educational Amendments of 1972. This allegation, as it relates to the District, is completely without merit. As this Court is well aware, Title IX states that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"

---

[21] *Id.* at ¶¶ 36 and 40.
[22] *Id.* at ¶ 49.
[23] *Id.* at ¶ 47.

The Policy, as written, applies to *all* students, male and female, and makes no distinction between sexes. The Plaintiffs are well aware that the Policy made no distinction among students and their use of cell phones on school property on the basis of sex as the Policy is quoted in Paragraph 10 of their Complaint. Furthermore, the Supreme Court has held that school districts are not vicariously liable to its students for all sexual harassment caused by employees and that, under Title IX, a student may hold a school liable "only for its own misconduct."[24] In other words, a school district will be held liable "only if the [school] remains deliberately indifferent to the acts of harassment of which it has actual knowledge."[25] For a school district to have actual knowledge, the harassment must be reported to an "appropriate person…with the authority to take corrective action to end the discrimination."[26]

Here, Plaintiffs only allege that "an appropriate person" at the District had actual knowledge of the harassment.[27] Plaintiffs have not identified who this "appropriate person" is, but the District can only assume it was Defendant Goodlett. None of the facts alleged in Plaintiffs' Complaint point to any instance where any District employee (other than Defendant Goodlett) had knowledge of the alleged "discrimination and harassment," and the bad actor himself cannot qualify as "an appropriate person" for purposes of establishing a Title IX claim.[28] As such, Count II of Plaintiffs' Complaint must be dismissed.

---

[24] *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 640 (1999).
[25] *Murrell v. Sch. Dist. No. 1, Denver, Colo.,* 186 F.3d 1238, 1246 (10th Cir.1999); *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998).
[26] *Gebser* 524 U.S. at 290 (1998).
[27] *See* Plaintiffs' Complaint, ¶ 45.
[28] *See Escue v. Northern OK College* 450 F.3d 1146, 1152 (10th Cir. 2006).

### c. This Court should assert supplemental jurisdiction and find that the District is immune from liability or, alternatively, cannot be liable for the unforeseeable criminal acts of Defendant Goodlett.

For purposes of this Motion, the District requests that this Court assert supplemental jurisdiction over the state law claims asserted by the Plaintiffs. 28 U. S. C. §1367(a) states that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." This Court has supplemental jurisdiction over the state law claims in this case because they are so interrelated with the federal Fourth Amendment and Title IX claims as to "form part of the same case or controversy."[29] In reading the specific language of the statute, "if there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims."[30] Courts have traditionally held that supplemental jurisdiction should be asserted to serve the interests of "economy, convenience, fairness, and comity that underlie the doctrine."[31]

The present case can be easily determined by an examination of the Policy and the allegations contained within the Complaint. Indeed, all of the claims against the District focus on the Policy adopted by the school which allows the school to confiscate cell phones when students violate school policy. The federal and state law claims are intertwined, and it would serve the interests of judicial economy to hear all claims simultaneously.[32] As stated by the Western District of Michigan in explaining the principles that weigh in favor of asserting supplemental jurisdiction, "Splitting the case into two lawsuits in two courts would not serve economy, convenience or fairness. The rule's general purpose is to 'adjudicate interrelated

---

[29] 28 U.S.C. § 1367(a).
[30] *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998).
[31] *City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, 172-73 (1997).
[32] *See Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195 (6th Cir. 2004).

matters in one litigation, so as to obtain consistent and fair results for the parties and avoid duplication of efforts for the courts.' This purpose would be frustrated by dismissing the [state law] claims."[33]

In addressing the District's Motion to Dismiss Plaintiffs' tort claims, this Court should first consider that the District is entitled to governmental immunity and Plaintiffs' claims are thereby barred. The courts have held that "governmental immunity" is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a government agency."[34] Kentucky courts have long-recognized that school boards are state governmental agencies.[35] As state governmental agencies, school boards are cloaked with governmental immunity.[36] Because school boards are protected by governmental immunity, they cannot be sued in tort if their actions at issue were done in the course of performing a governmental function.[37] Accordingly, a school board is only exposed to a tort suit when it is performing a proprietary function, rather than a governmental function.[38]

The courts employ the following test to determine whether a government agency is performing a governmental or proprietary function: "whether the agency is 'carrying out a function integral to state government,' or whether it is 'engaged in a business of a sort theretofore engaged in by private persons or corporations for profit.'"[39] It has long-been

---

[33] *Glover v. Nationwide Mut. Fire Ins. Co.*, 676 F. Supp. 2d 602, 621 (W.D. Mich. 2009) (*citing Certain Interested Underwriters at Lloyd's v. Gulf Nat. Ins. Co.,* 898. F. Supp. 381 (N.D. Miss. 1995) (internal citations omitted).
[34] *Yanero v. Davis*, 65 S.W.3d 519, 519 (Ky. 2001) (*citing* 57 Am. Jur. 2d, *Municipal County School and State Tort Liability*, § 10 (2001)).
[35] *Clevinger v. Bd. of Educ. of Pike County*, 789 S.W.2d 5, 10-11 (Ky. 1990); *see also Ammerman v. Bd. of Educ. of Nicholas County*, 30 S.W.3d 793, 797 (Ky. 2000); *Rose v. The Council for Better Educ., Inc.*, 790 S.W.2d 186, 200 (Ky. 1989).
[36] *Grayson County Bd. of Educ. v. Casey*, 157 S.W.3d 201, 202-03 (Ky. 2005).
[37] *Schwindel v. Meade County*, 113 S.W.3d 159, 168 (Ky. 2003).
[38] *Yanero*, 65 S.W.3d at 527.
[39] *Schwindel*, 113 S.W.3d at 168 (citing *Kentucky Ctr. for the Arts Corp. v. Berns*, 801 S.W.2d 327, 332 (Ky. 1990), and *Yanero*, 65 S.W.3d at 520) (internal citations omitted).

recognized that the provision of public education is a governmental function.[40] A school board's fulfillment of this governmental function entitles it to governmental immunity.[41]

In this case, the District was unquestionably performing a governmental function, namely enacting a cell phone policy as required by KRS 158.165. As related to the Plaintiffs' claims for invasion of privacy, outrage, libel, and school district liability, not only does the District's conduct not rise to the level necessary to establish these claims, but the District, to fulfill its governmental function, was required to implement a policy regulating the use of cell phones by students during school hours. Any and all alleged tortious actions and liabilities solely arise from actions that occurred when the District was enforcing a mandated cell phone policy, a governmental function. Consequently, Plaintiffs have no valid tort claims against the District.

In the alternative, state law in Kentucky holds that it is "the rule that every person owes a duty to every other person to exercise ordinary care in his activities to prevent *foreseeable* injury."[42] Accordingly, Kentucky courts have consistently ruled that there is no duty to protect others from the *unforeseeable* criminal acts of third-parties.[43] Additionally, whether a legal duty exists is a pure question of law for the Court to decide.[44] Based on Kentucky law and Plaintiffs' own allegations, Counts IV (Invasion of Privacy), V (Outrage), VI (Libel), and VII (School District Liability) must be dismissed against the District as a matter of law.

---

[40] *See, e.g., James v. Wilson*, 95 S.W.3d 875, 908 (Ky. App. 2002) ("public education is unquestionably a traditional role of government . . ."); *Wallace v. Laurel County Bd. of Educ.*, 287 Ky. 454, 153 S.W.2d 915, 916 (1941) ("the County Board of Education is an arm of the state and that in operating common schools it is engaged in a governmental function."); *Cullinan v. Jefferson County*, 418 S.W.2d 407, 408 (Ky. 1967) ("[l]ocal school boards fulfill a government function of state government by providing public education within a particular geographical area.").
[41] *Yanero*, 65 S.W.3d at 527.
[42] *Waldon v. Housing Auth. of Paducah*, 854 S.W.2d 777, 778 (Ky. App. 1991), *citing Grayson Fraternal Order of Eagles, Aerie No. 3783, Inc., v. Claywell*, 736 S.W.2d 328 (Ky. 1987). (Emphasis added).
[43] *See Harlan v. G.C. Williams Funeral Home, Inc.,* 2008 Ky. App. Unpub. LEXIS 794 *10 (Ky. App. 2008).
[44] *Lee v. Farmers Rural Electric Cooperative Corp.*, 245 S.W.3d 219, 217-8 (Ky. App. 2007).

In *James v. Wilson*, a school shooter stole a gun that was kept unloaded in a storage case in a cabinet behind several other items.[45] He also broke into a storage shed and stole ammunition. The court held that the owner of the gun "was under no duty to anticipate that [the shooter] would ransack his shed, steal his gun and ammunition, and use them in the intentional shootings of other students."[46] By contrast, in *Waldon v. Housing Authority of Paducah*, the housing authority was aware that an individual named Williams had made repeated threats to kill a tenant, Smith, was aware that Williams was residing in the housing complex without permission, and was aware that crimes frequently occurred at the complex.[47] The housing authority failed to remove Williams from the complex and failed to provide any security guards. Williams subsequently killed Smith. The Court held that the housing authority's inaction was sufficient to create a jury question on the cause of Smith's death such as to preclude summary judgment for the housing authority.[48]

Based on the analysis above, this Court should likewise find that the conduct of Defendant Goodlett in this case was unforeseeable. By Plaintiffs' own admissions, as set forth in the Complaint, "[e]ven assuming that school officials were familiar with the menu structure on Plaintiffs' cellular telephones, several steps were required in order to view any of the photographs stored on their respective telephones from the cellular telephones' main menu screen."[49] The Complaint goes on to state that "upon accessing the personal content of the students' cellular telephones while those cellular telephones were in his custody and control…[Defendant Goodlett] transferred personal and private photographic images from the

---

[45] *James v. Wilson*, 95 A.Q.3d 875 (Ky. App. 2002).
[46] *Id*. at 886.
[47] *Waldon v. Housing Auth. of Paducah*, 854 S.W.2d 777, 779 (Ky. App. 1991).
[48] *Id*.
[49] Plaintiffs' Complaint, ¶11.

cellular telephones of the Plaintiffs….to thumb drives owned by him[.]"[50] Ultimately, Plaintiffs admit through the Complaint that Defendant Goodlett "uploaded the personal and private photographic images of the Plaintiffs" to a Russian website and the "IP address of the computer responsible for uploading the images of the Plaintiffs…belonged to a Comcast Cable account registered to [Defendant Goodlett]."[51]

First, it was unforeseeable that the cell phones, when confiscated in compliance with the Policy, would contain personal photographs depicting full or partial nudity of the Plaintiffs. Second, it was unforeseeable that Defendant Goodlett would access these photographs from the Plaintiffs' cell phones using a personal device and download them to a personal thumb drive. Finally, it was unforeseeable that Defendant Goodlett would upload the personal images of the Plaintiffs to a Russian website. The District had no duty to anticipate the intentional acts of Defendant Goodlett and simply cannot be liable for these unforeseeable criminal acts.

      i. Count VII: School District Liability

In Count VII of the Complaint, Plaintiffs make sweeping and blatantly false statements in an attempt to pin the unforeseeable criminal conduct of Defendant Goodlett on the District. As set forth in the pleading standard above, although FRCP 8(a)(2) only requires a "short plain statement of the claim showing the pleader is entitled to relief," to survive a motion to dismiss, the Plaintiffs' claim must contain facts that are plausible and allow the Court to draw a reasonable inference as to the District's liability.[52] Plaintiffs are required to prove they are

---

[50] *Id*. at ¶ 25.
[51] *Id*. at ¶¶ 27 and 28.
[52] *Moore v. Zydus Pharms. (USA), Inc.*, 2017 U.S. Dist. LEXIS 160415, *5 (E. D. Ky. 2017) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2002) (internal quotations omitted).

entitled to relief by asserting more than just "labels and conclusions" that would be consistent with liability.[53]

First, Plaintiffs erroneously assert that the District, through implementation of the Policy, gave Defendant Goodlett "final decision-making authority in regard to the confiscation, retention, *search*, disposition and/or return of a student's cellular telephone and the contents thereof[.]"[54] This is patently false. The Policy, as restated in Plaintiffs' Complaint, did not permit Defendant Goodlett, or any District employee, to *search* students' cell phones. Defendant Goodlett was not given unfettered access to students' cell phones, rather, he was to "hold" students' cell phones for a fixed period of time depending on whether it was confiscated as a result of a first or repeated offense. As stated above, it was completely unforeseeable that Defendant Goodlett would obtain a personal device to access and download private photos from students' cell phones.

The next conclusion improperly asserted by Plaintiffs is the "negligent hiring" claim set forth in Paragraph 68 of Plaintiffs' Complaint. Plaintiffs' conclusion that the District "failed to adequately screen the background and other relevant history of [Defendant Goodlett]" is without basis in law or fact.[55] In fact, Defendant Goodlett had worked in other school districts throughout Kentucky without incident, and the District did perform a background check on him in this case as is required by law.[56] This blatant disregard for the pleading standard should not be permitted by the Court.

Moreover, the Court should not be persuaded by Plaintiffs' attempt to muddy the waters and argue that there "was not a policy or procedure in place to document the chain of custody of

---

[53] *Twombly*, 550 U.S. at 555.
[54] Plaintiffs' Complaint, ¶ 64. (Emphasis added).
[55] *Id.* at ¶ 68.
[56] *See* KRS 160.380.

students' cellular telephones once confiscated, nor to document, monitor or protect cellular telephones or the confidential matters stored therein while in custody and control of…[Defendant Goodlett]," or that there was "no sufficient training or supervision provided by [the District] to [Defendant Goodlett]."[57] The Policy, as written, did not permit any school official to *search* the cell phones of students. The question in any negligence action is whether the defendant owes a legal duty to the plaintiff and, in this instance, there can be no state or federal law found that imposes a duty upon the District to implement a policy to prevent conduct that is already deemed criminal.[58]

Finally, the District cannot be vicariously liable for any of Defendant Goodlett's alleged actions. It is well-recognized that "public officials are responsible only for their own malfeasance and negligence and are not responsible for the negligence of those who are employed by them…"[59] This principle has been extended by the Kentucky courts to school boards so that a school board cannot be held vicariously liable for its employees' negligence.[60] Under this firmly established legal principle, the Board cannot be held vicariously liable for any alleged negligent acts of Defendant Goodlett.[61] Thus, the District is entitled to dismissal of Plaintiffs' claims sounding in tort and negligence which stem from Defendant Goodlett's alleged conduct.

### ii. Counts IV – VI: Invasion of Privacy, Outrage, and Libel

Plaintiffs' claims for Invasion of Privacy, Outrage, and Libel cannot be sustained as a matter of law against the District because the Policy did not allow students' cell phones to be

---

[57] *Id.* ¶ 23. *See also*, ¶¶ 36, 66, and 67.
[58] *See James v. Wilson*, 95 S.W.3d 875, 889 (Ky. App. 2002) (Holding that "it is well settled in Kentucky jurisprudence that there is no legal duty to report the commission of a crime by another, let alone the possibility of a crime being committed by another").
[59] *Moores v. Fayette County*, 418 S.W.2d 412, 414 (Ky. 1967).
[60] *Grayson*, 157 S.W.3d at 203; *Yanero*, 65 S.W.3d at 527.
[61] *Id.*

searched, the District did not know about Defendant Goodlett's illegal conduct, and the illegal conduct was not foreseeable. Plaintiffs have admitted as follows in their Complaint: (1)"[Defendant Goodlett] uploaded the personal and transferred personal and private images from the cellular telephones of the Plaintiffs…to thumb drives owned by him"; (2) "[Defendant Goodlett] uploaded the personal and private photographic images to one or more internet websites with the intent of trading for more images"; and (3) "the IP address of the computer responsible for uploading the images of the Plaintiffs…belonged to a Comcast Cable account registered to [Defendant Goodlett]."[62] There is no conduct of the District that rises to the level necessary for Plaintiffs to sustain their claims for Invasion of Privacy, Outrage, and Libel.

The District did nothing in this case other than enforce the Policy. The Policy is not unconstitutional and merely allows for the confiscation of students' cell phones during school hours to protect the learning environment. The confiscation of cell phones does not "intrude upon the solitude in seclusion" of the Plaintiffs; the confiscation of cell phones is not so "extreme and outrageous" as to cause emotional distress to the Plaintiffs; and the confiscation of cell phones did not communicate or publish material harming Plaintiffs' reputations.[63] The conduct that the Plaintiffs refer to in asserting these claims is conduct the Plaintiffs have admitted was performed solely by Defendant Goodlett, and for which he has been charged criminally.

## IV. CONCLUSION

Courts throughout this country have held that a policy allowing for the confiscation of students' cell phones during school hours is not unconstitutional.[64] Plaintiffs have attempted to impute Defendant Goodlett's criminal liability on the District by asserting erroneous facts and

---

[62] *Id.* ¶¶ 25, 26, and 28.
[63] *Id.* at Counts IV, V, and VI.
[64] *See supra* notes 16-22 and accompanying text.

16

unsupported claims. The Court should not be persuaded by this. KRS 158.165 requires that a cell phone policy be in place; accordingly, the District had a duty to implement and enforce the Policy at issue and did so in compliance with Title IX of the Educational Amendments of 1972. The District is immune from tort liability, cannot be held vicariously liable for Defendant Goodlett's alleged actions, and did not have a duty to implement policies or train employees to prevent conduct that was criminal and completely unforeseeable. Plaintiffs' own allegations make it clear that the conduct at issue is that of Defendant Goodlett, for which he has been held criminally accountable. No other District employee searched the Plaintiffs' cell phones, nor did the District put any policy in place allowing for the search of students' cell phones.

Based on all of the aforementioned, Defendant, LaRue County School District, respectfully requests that this Court sustain its Motion to Dismiss.

Respectfully submitted,

*/s/Dana L. Collins*
Dana L. Collins
dcollins@middletonlaw.com
Mark S. Fenzel
mfenzel@middletonlaw.com
Vanna R. Milligan
vmilligan@middletonlaw.com
MIDDLETON REUTLINGER
2600 Brown & Williamson Tower
401 South Fourth Street
Louisville, KY 40202
Telephone: (502) 584-1135
Facsimile: (502) 561-0442

And

Thomas P. Claycomb
tom@claycomblawoffice.com
Claycomb Law Office, PLLC
208 N. Lincoln Blvd., P. O. Box 288
Hodgenville, Kentucky 42748
Telephone: (270) 358-9620
Facsimile: (270) 358-9622
***Counsel for Defendant,***
***LaRue County Board of Education***

# CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2017, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Joseph H. Mattingly III
joe@mattinglylawoffices.com
MATTINGLY & NALLY-MARTIN, PLLC
104 W. Main Street
P.O. Box 678
Lebanon, KY 40033
***Counsel for Plaintiffs***

Jude A. Hagan
jude@kylawoffices.com
105 West Main Street
Lebanon, KY 40033
***Counsel for Plaintiffs***

I further certify that I mailed the foregoing document by first-class mail to the following:

Stephen Kyle Goodlett
Grayson County Detention Center
320 Shaw Station Road
Leitchfield, KY 42754
***Defendant***

/s/Dana L. Collins
***Counsel for Defendant,***
***LaRue County Board of Education***