UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO: 3:17-cv-00578
*Electronically Filed*

| | |
|---|---|
| K.R.M., A.B.W., M.L.K., J.H.D., M.A.M., K.M.C., M.A.E.M., and A.M.H.,   )<br><br>Plaintiffs,   )<br>vs.   )<br>   )<br>LARUE COUNTY SCHOOL DISTRICT,   )<br>   )<br>and   )<br>   )<br>STEPHEN KYLE GOODLETT,   )<br>   )<br>Defendants   ) | PLAINTIFFS' RESPONSE TO MOTION TO DISMISS FILED BY DEFENDANT, LARUE COUNTY SCHOOL DISTRICT |

Come the Plaintiffs, K.R.M., A.B.W., M.L.K., J.H.D., M.A.M., K.M.C., M.A.E.M., and A.M.H., by counsel, and file this as their Response to the Motion of the Defendant, LaRue County School District ("School District"), to dismiss this action pursuant to F.R.Civ.P. 12(b)(6).

**A. Introduction**

This action involves the custom and pattern developed at the Larue County High School ("LCHS") for the search of students' cellular telephones which had been confiscated pursuant to a policy adopted by the School District. It is important for the Court to understand that the Plaintiffs do not allege that the confiscation policy is actionable. Rather, the Plaintiffs

1

allege that upon confiscation, the subsequent illegal search[1] of students' cellular telephones by school officials is actionable.

The rules in regard to the permissible scope of a cellular telephone search by school officials have been clear since at least 2013, when the Sixth Circuit Court of Appeals issued its opinion in G.C. v. Owensboro Public Schools, 711 F.3d 623 (6th Cir. 2013). There, a Kentucky high school student sued his school district, principal and other school officials after his cellular telephone was confiscated pursuant to a policy similar to the one in place at LCHS. Upon confiscation of the device, an assistant principal at the school searched the student's cellular telephone and discovered evidence which was later used to discipline the student. Recognizing the two-step analysis to determine the appropriateness of searches articulated in *New Jersey v. T.L.O.*, 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), and applying that analysis to searches of cellular telephones by school officials, the Sixth Circuit explained:

> A search is justified at its inception if there is reasonable suspicion that a search will uncover evidence of further wrongdoing or of injury to the student or another. Not all infractions involving cell phones will present such indications. Moreover, even assuming that a search of the phone was justified, the scope of the search must be tailored to the nature of the infraction and must be related to the objectives of the search. Under our two-part test, using a cell phone on school grounds does not automatically trigger an essentially unlimited right enabling a school official to search any content stored on the phone that is not related either substantively or temporally to the infraction.

G.C. v. Owensboro Public Schools, 711 F.3d, at 633.

The United States Supreme Court emphasized the delicate privacy concerns implicated by cellular telephone searches less than one year later in *Riley v. California*, __ U.S. __, 134 S.Ct.

---

[1] The School District candidly admits that Principal Goodlett's search of students' cellular telephones was illegal. (School District Motion To Dismiss (Doc. #9), at p. 7).

2

2473, 189 L.Ed.2d 430 (2014). There, the Supreme Court held that warrantless harvesting of the digital contents of smart devices was unlawful absent additional justification. The Justices asserted that cellular telephones and other smart devices are unique because of the amount of personal data they contain. *Id.*, at 2485. By searching a cellular telephone, it is possible to aggregate many discrete pieces of private information to essentially reconstruct a person's entire private life. *Id.*, at 2489. The Supreme Court declared that the privacy protections owed modern cellular telephones are *even greater* than what we enjoy in our homes, the area that has traditionally received the greatest Fourth Amendment protection, thereby implying that cellular telephone searches – of any kind and in any place – are owed the greatest possible constitutional protection. *Id.*, at 2488-2491. *Riley*'s clear import and effect upon the *T.L.O.* analysis is to make more rigid the "reasonable scope" limitation on school officials' search of students' cellular telephones. In other words, for a school administrator to take the quantum leap from cellular telephone confiscation to the extreme intrusiveness of a search of its digital contents, some reasonable suspicion of danger or the hiding of evidence of wrongdoing related to the cellular telephone contents must exist.

  The concepts articulated in G.C. *v. Owensboro Public Schools* and in *Riley v. California* were known, or should have been known, to the School District and its officials, including the Defendant, Stephen Kyle Goodlett ("Principal Goodlett"), at all relevant times involved herein.

  Equally important for the Court's consideration of the School District's pending Motion to Dismiss pursuant to F.R.Civ.P. 12(b)(6) is the clear general authority of a school official, particularly a high school principal, to conduct searches of a student's property while on school grounds. The School District repeatedly makes the point that its cellular telephone confiscation policy does not specifically give school officials authority to search students' cellular telephones

3

upon confiscation, as if that fact shields it from liability for Principal Goodlett's searches. However, the School District ignores the general authority of school officials to conduct searches. More importantly, the School District's own Search and Seizure Policy authorizes the search of a student's personal effects by, "a certified person directly responsible for the conduct of the pupil or the principal/designee of the school which the student attends."[2]

The Plaintiffs will address the School District's specific arguments that they have not alleged sufficient facts to support causes of action hereinafter.

### B. The Plaintiffs' Allegations

Relevant to the Plaintiffs' claims against the School District, they allege the following:

1. The Plaintiffs are female former students at LCHS from 2012-2016, while Principal Goodlett was the highest ranking school official there;[3]

2. During the Plaintiffs' attendance at LCHS, its policy permitted cellular telephones at school but prohibited their use during school hours;[4]

3. On one or more occasions during the Plaintiffs' attendance at LCHS, their respective cellular telephones were confiscated by school officials, pursuant to the school's policy;[5]

---

[2] Search and Seizure Policy of Larue County Schools, Policy 09.436, attached hereto. The Plaintiffs realize that matters outside the Complaint should not normally be considered by the Court on a Motion to Dismiss pursuant to F.R.Civ.P 12(b)(6). However, this additional information is necessary for the Court to consider in light of the School District's multiple statements of purported fact, outside the pleadings, and its inference that Principal Goodlett had no authority under any School District Policy to conduct a search of the Plaintiffs' cellular telephones. Of particular concern is the School District's patently false closing statement that, "nor did the District put any policy in place allowing the search of students' cell phones." (School District Motion to Dismiss (Doc. #9), at p. 17).

[3] Complaint, at ¶¶ 1, 3 and 9.

[4] Complaint, at ¶ 10.

[5] Complaint, at ¶ 21.

4. Principal Goodlett was vested with final decision-making authority with respect to whether a cellular telephone confiscated pursuant to school policy would be searched and/or returned to the student;[6]

5. LCHS had no policy or procedure in place to document chain of custody of a student's cellular telephone confiscated under its policy but, instead, disclaimed responsibility for those cellular telephones;[7]

6. No sufficient training or supervision was provided by the School District to its employees, including Principal Goodlett, in regard to, particularly, the constitutional constraints imposed by federal and state law in the search of a student's cellular telephone confiscated under LCHS policy;[8]

7. Following the confiscation of the Plaintiffs' respective cellular telephones pursuant to LCHS policy, and while in the custody of Principal Goodlett, acting in his official capacity as the highest ranking school official at LCHS, Principal Goodlett conducted a search of the Plaintiffs' cellular telephones;[9]

8. The search by Principal Goodlett was without reasonable suspicion and unreasonable in scope;[10]

---

[6] Complaint, at ¶ 22, 64.

[7] Complaint, at ¶ 23.

[8] Complaint, at ¶ 23, 36 and 67.

[9] Complaint, at ¶ 24.

[10] Complaint, at ¶¶ 37-40.

5

9. Following his search of the Plaintiffs' cellular telephones, Principal Goodlett transferred images of the Plaintiffs found on their cellular telephones and then uploaded those images to internet websites;[11]

10. The actions of Principal Goodlett in conducting illegal searches of students' cellular telephones while in his custody and control were known to other administrators and personnel at LCHS and were known, or were so widespread as with reasonable diligence should have been known to the School District, indicating a tolerance for, or acquiescence of such searches;[12]

11. In hiring Principal Goodlett, the School District failed to adequately screen his background and other relevant history and, had it done so, it would have concluded that he was not appropriate for the position of Principal of LCHS.[13]

It is in the context of these allegations that the School District files its Motion to Dismiss under F.R.Civ.P. 12(b(6).

### C. Argument

#### 1. Standard For Evaluation Of Motions To Dismiss Pursuant To F.R.Civ.P. 12(b)(6).

As acknowledged by the School District, a Motion to Dismiss pursuant to F.R.Civ.P. 12(b)(6) tests only the sufficiency of the Plaintiffs' Complaint. The court must construe the Complaint in the light most favorable to the Plaintiffs and must accept all the factual allegations contained in the Complaint as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). In

---

[11] Complaint, at ¶¶ 25-28.

[12] Complaint, at ¶ 65.

[13] Complaint, at ¶ 68.

order to survive a Motion to Dismiss under F.R.Civ.P. 12(b)(6), the Complaint need contain only "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed2d 929 (2007). In other words, the Complaint need only establish, "enough facts to raise a reasonable expectation that discovery will reveal evidence" to show the averments are factually plausible. *Id.*, 550 U.S. at 556. The School District has the burden of showing that the Plaintiffs have failed to state a claim for relief. *Armengau v. Cline*, 7 F.App'x 336, 343 (6th Cir. 2001).

### 2. The Plaintiffs' Complaint Alleges Sufficient Facts To State A Claim That The School District Violated The Fourth Amendment Of The United States Constitution, 42 U.S.C. §1983, And Article I, Section 10 Of The Kentucky Constitution.

A school district may be held liable for constitutional violations under 11 U.S.C. §1983 when execution of its policies or customs, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury. *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To impose liability on a school district under 11 U.S.C. §1983, a plaintiff must identify a school district "policy" or "custom" that caused her injury. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403-404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

In order to prove the existence of a school district's illegal policy or custom, a plaintiff can refer to (1) the school district's legislative enactment or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009).

The School District argues that because a policy that permits confiscation of a student's cellular telephone during instruction hours has repeatedly been held to be constitutionally permissible, the Plaintiffs have failed to state a violation by the School District of the Fourth Amendment to the United States Constitution, 11 U.S.C. §1983 and Article I, Section 10 of the Kentucky Constitution. Its argument simply misses the point.

The Plaintiffs' cause of action is clearly not premised on the confiscation of their cellular telephones. Rather, their claims are based on the subsequent illegal search of those cellular telephones while in Principal Goodlett's custody and control.

While the Plaintiffs stand by each of their allegations, and are confident that each will be substantiated through further discovery and at trial, the School District improperly implores the Court to resolve any factual disagreements with the Plaintiffs' allegations in the School District's favor. For example, in response to the Plaintiffs' allegations in numerical paragraph 65 of the Complaint, the School District argues that, "Plaintiffs cannot **prove** that anyone other than Defendant Goodlett searched their cell phones, nor can they **prove** that any other District employee knew about Defendant Goodlett's illegal conduct."[14] The test for purposes of the School District's pending Motion to Dismiss is **not** whether the Plaintiffs' allegations can be proven through discovery and trial, even though the Plaintiffs are confident that each of their allegations will be proven. Rather, the test is whether the Plaintiffs' **allegations**, if taken as true, are sufficient to state a cause of action against the School District under 11 U.S.C. §1983. *Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010).

---

[14] School District's Motion to Dismiss, at pp. 5, 7.

The Plaintiffs have sufficiently plead liability against the School District on three separate grounds:

> i) **Principal Goodlett Was The Official With Final Decision-Making Authority With Respect To The Search Of The Plaintiffs' Cellular Telephones And the Scope Thereof.**

The reasonableness of any search involves a twofold inquiry: "first, one must consider whether the . . . action was justified in its inception, second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *New Jersey v. T.L.O.*, 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). In school settings, justification for search requires, "a moderate chance of finding evidence of wrongdoing." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009). Further, the search, "will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 342, 105 S.Ct. 733. The Sixth Circuit Court of Appeals explains that, "using a cell phone on school grounds does not automatically trigger an essentially unlimited right enabling a school official to search any content stored on the phone that is not related either substantively or temporally to the infraction [which caused confiscation of the phone]." *G.C. v. Owensboro Public Schools*, 711 F.3d 623, 633 (6th Cir. 2013).

The Plaintiffs allege that Principal Goodlett was vested with final decision-making authority in regard to the search of student's cellular telephones at LCHS, and the scope thereof. Even if Principal Goodlett's search of students' cellular telephones was "justified in its

9

inception," the Plaintiffs allege that the scope of the search engaged in by Principal Goodlett, as the final decision-maker in regard to the appropriate scope, clearly exceeded that which was reasonably necessary to reveal evidence of criminal activity, impending contravention of additional school rules, or potential harm to anyone at LCHS.

A school board's policy, the execution of which imposes liability upon the school board, does not have to be written law; it can be created "by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. Moreover, even though the Plaintiffs allege a clear pattern, the alleged adverse action need not be part of a pattern because "municipal liability may be imposed for a single decision by municipal policymakers." *Pembaur v. City of Cincinnati*, 473 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

Where Principal Goodlett is alleged to be the final decision-maker in regard to the search of students' cellular telephones at LCHS, and where it is alleged that his decisions in that regard infringed upon the students' Fourth Amendment rights, it is clear that the Plaintiffs have sufficiently plead a constitutional cause of action against the School District.

      **ii)**      **The School District Provided No, Or Inadequate Training Or Supervision In Regard To Searches Of Students' Cellular Telephones.**

A Plaintiff must generally plead, and later prove, three elements in order to succeed on a failure to train claim: (1) that the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) that the supervisor failed to train properly the subordinates thus illustrating a "deliberate indifference" to the rights of the persons with whom the subordinates come into contact; and (3) that this failure to train actually caused the subordinates to violate the plaintiff's rights. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1205, 103

L.Ed.2d 412 (1989). A plaintiff can allege the second element – the deliberate indifference element of a failure to train claim – "based on a supervisory power's failure to train its employees concerning an obvious constitutional duty that the particular employees are certain to face." *Canton*, 489 U.S. at 390, 109 S.Ct. 1205. "In other words, if the supervisory power fails to train subordinates who will almost certainly encounter situations implicating the constitutional right, it is fair to state that the supervisory power has made a 'deliberate' or conscious choice." *Brown v. Mitchell*, 308 F.Supp. 2d 682, 705 (E.D.Va. 2004) (quoting *City of Canton v. Harris,* 489 U.S. at 389).

Clearly, the Plaintiffs here have alleged constitutional violations and that those violations were caused by the School District's failure to train Principal Goodlett as to the limitations in the scope of permitted cellular telephone searches. Principal Goodlett's "obvious constitutional duty" was made clear at least as early as the Sixth Circuit Court of Appeals' decision in G.C. v. Owensboro Public Schools, 711 F.3d 623 (6th Cir. 2013) (outlining the permissible scope of a high school student's cellular telephone) and the U.S. Supreme Court's holding in *Riley v. California*, __ U.S. __, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) (outlining the limited scope of permitted cellular telephone searches, in general). Given the prevalence of cellular telephone use and possession by students,[15] it is an "almost certainty" that high school principals will encounter situations where it is necessary to search a student's cellular telephone, thus implicating the constitutional rights of students in the context of those cellular telephone searches. The Plaintiffs specifically allege that the School District's failure to train in regard to

---

[15] One study estimates that 77% of teenagers take their phones with them to campus every school day. *See* Amanda Lenhart *et al.*, *Chapter Four: How Parents and Schools Regulate Teens' Mobile Phones*, PEW RES. CTR. (Apr. 20, 2010), http://www.pewinternet.org/2010/04/20/chapter-four-how-parents-and-schools-regulate-teens-mobile-phones.

the limitations on permissible search of a student's cellular telephone was such that, "any reasonable policymaker, would have concluded that the plainly obvious consequence of its failure . . . would be the deprivation of a student's federally protected rights . . . ."[16]

Thus, it is clear that the Plaintiffs have sufficiently plead a constitutional cause of action against the School District for failure to train its officials, including Principal Goodlett.

### iii) The School District Had A Custom Or Tolerance Or Acquiescence For Federal Rights Violations Related To Searches Of Students' Cellular Telephones.

Where a claim is based on a school district's alleged "inaction," the plaintiff must allege, (1) the existence of a clear and persistent pattern of constitutional violations by school district employees; (2) notice or constructive notice on the part of the school district; (3) the school district's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the school district's custom was the "moving force" or direct causal link in the constitutional deprivation. *Arendale v. City of Memphis*, 519 F.3d 587, 599-600 (6th Cir. 2008).

Here, the Plaintiffs allege a pattern of cellular telephone searches conducted over a four-year period. They allege that the practice, unwritten policy or custom involving the search of cellular telephones was known to other administrators and personnel at LCHS and was known, or were so widespread as with reasonable diligence should have been known to the School District. The Plaintiffs allege that the School District tacitly approved of the practice of searching cellular telephones. They have also alleged that the School District's inaction was directly related to the constitutional violations alleged.

---

[16] Complaint, at ¶67.

Clearly, for purposes of the School District's Motion to Dismiss under F.R.Civ.P. 12(b)(6), the Plaintiffs have sufficiently alleged constitutional violations.

### 3. The Plaintiffs' Complaint Alleges Sufficient Facts To State A Claim That The School District Violated Title IX Of The Educational Amendments of 1972.

Like the School District's argument with respect to the Plaintiffs' claims of violation of the Fourth Amendment of the United States Constitution, 42 U.S.C. §1983, and Article I, Section 10 of the Kentucky Constitution, with respect to the Plaintiffs' Title IX claims, the School District seeks to divert the Court's attention to the permissible confiscation of the students' cellular telephones, rather than the impermissible search of those devices. While the LCHS confiscation policy may have applied equally to both male and female students, the Plaintiffs allege that the custom, unwritten policy or practice at LCHS for the search of a *female* student's cellular telephone was entirely different than for male students. As was the case with the Plaintiffs' other claims, in regard to their Title IX claims they allege that the discriminatory search practice was known to other administrators and personnel at LCHS and was known, or were so widespread as with reasonable diligence should have been known to the School District. The Plaintiffs allege that an "appropriate person" with the School District was aware of the discriminatory practice. Thus, for purposes of the School District's Motion to Dismiss under F.R.Civ.P. 12(b)(6), the Plaintiffs have sufficiently alleged violations of Title IX of the Educational Amendments of 1972.

### 4. The Plaintiffs Recognize The School District's Entitlement To Governmental Immunity And Assert State Tort Law Claims Only Against Principal Goodlett, In Both His Official And Individual Capacities.

The Plaintiffs are fully aware of the School District's entitlement to governmental immunity while performing a governmental function. *Yanero v. Davis*, 65 S.W.3d 519 (Ky. 2001). The Plaintiffs likewise concede that the School District was performing a "governmental," as opposed to a "proprietary," function in the operation of its schools. Although a reasonable conclusion from a literal reading of the claims made in the Complaint is that the Plaintiffs assert state tort claims directly against the School District, that was not the Plaintiffs intent. Rather, the state tort law claims asserted in Counts IV, V and VI of the Complaint were intended for assertion only against Principal Goodlett, individually and in his official capacity.[17] As additional clarification, the allegations contained in Count VII of the Complaint refer to the School District's liability for claims asserted in Counts I, II and III of the Complaint.

Thus, the School District's arguments contained section III(c) of its Motion to Dismiss are moot, including, in particular, its argument that Principal Goodlett's criminal conduct was "unforeseeable," and the School District thus cannot be held liable for that conduct. In regard to the School District's "unforeseeability" argument, the state law jurisprudence cited by the School District in the context of state tort claims has no application to the Federal claims

---

[17] Although not relevant in the context of the pending Motion to Dismiss, it is likely that Principal Goodlett has liability in his "official" capacity as a school official which will entitle him to defense and indemnity by the School District's liability insurance carrier.

14

asserted against the School District. Additionally, even if applicable, the School District again misses the point.

The Plaintiffs do not concede that the School District has no liability under the Fourth Amendment and Title IX claims for Principal Goodlett's actions in transferring private images from their cellular telephones to storage devices and then uploading those images to public internet sites. However, at least the unreasonable search of the students' cellular telephones *was foreseeable*, was alleged to be so, and constitutes a constitutional violation for which the School District is liable, even if the subsequent criminal conduct of Principal Goodlett was not foreseeable.

WHEREFORE, the Plaintiffs, K.B.M., A.B.W., M.L.K., J.H.D., M.A.M., K.M.C., M.A.E.M., and A.M.H. respectfully request that the Motion of the Defendant, Larue County School District, to dismiss the claims against it, pursuant to F.R.Civ.P. 12(b)(6), be denied.

Respectfully Submitted,

*/s/ Joseph H. Mattingly III*
**JOSEPH H. MATTINGLY III**
**MATTINGLY & NALLY-MARTIN, PLLC**
Attorneys at Law
104 W. Main Street - P.O. Box 678
Lebanon, Kentucky 40033
(270) 692 – 1718
joe@mattinglylawoffices.com

and

**JUDE A. HAGAN**
Attorney at Law
105 West Main Street
Lebanon, Kentucky 40033
(270) 692-2161
jude@kylawoffices.com

## **CERTIFICATION**

The undersigned does hereby certify that the foregoing Notice, was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants:

Dana L. Collins
Mark S. Fenzel
Vanna R. Milligan
MIDDLETON REUTLINGER
2600 Brown & Williamson Tower
401 South Fourth Street
Louisville, Kentucky 40202

Thomas P. Claycomb
Claycomb Law Office, PLLC
P.O. Box 288
Hodgenville, Kentucky 42748

Stephen Kyle Goodlett
Grayson County Detention Center
320 Shaw Station Road
Leitchfield, Kentucky 42754

By: ___/s/ *Joseph H. Mattingly III*___
     JOSEPH H. MATTINGLY III