UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| KAYLA R. MALOTT, et. al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 3:17-CV-578-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND** |
| LARUE COUNTY SCHOOL DISTRICT, ) | **ORDER DENYING MOTION TO** |
| et. al., ) | **DISMISS PLAINTIFFS' AMENDED** |
| ) | **COMPLAINT** |
| Defendants. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the second Motion to Dismiss [R. 24] filed by Defendant LaRue County School District ("LCSD" or "school district"). The Plaintiffs filed their original Complaint [R. 1] on September 20, 2017. The Plaintiffs then filed an Amended Complaint [R. 7] on October 10, 2017, adding three plaintiffs and reasserting and incorporating by reference the allegations of the original Complaint. [R. 7 at p. 1] Thereafter, Defendant LCSD filed its first Motion to Dismiss [R. 9], seeking dismissal of the claims asserted in both Complaints. [R. 9 at p. 1] Since that time, the Plaintiff has filed a new Amended Complaint [R. 23], and Defendant LCSD has filed a new Motion to Dismiss [R. 24] incorporating the arguments laid out in its first Motion to Dismiss. The latest Amended Complaint merely names the plaintiffs in compliance with the Court's previous Order at [R. 22]. The Court reads the second Amended Complaint [R. 23] to incorporate both the original Complaint [R. 1] and the first Amended Complaint [R. 7] (even though the second Amended Complaint states only that it reasserts the allegations of the original Complaint without mentioning the first Amended Complaint), because it names the additional plaintiffs added in the first Amended Complaint. [R. 7; *see also* R. 24 at p. 2]. In response to the latest Motion to Dismiss, the Plaintiffs incorporated

by reference their original Response at [R. 14]. [R. 25 at p. 1] Because the court construes the latest Amended Complaint to incorporate the previous two Complaints, the Court will likewise consider the arguments contained in Defendant LCSD's Reply to Response to the original Motion to Dismiss [R. 15].

## I. Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A claim is factually plausible if the complaint contains factual allegations that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This does not require a showing that the defendant is probably liable, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To meet this plausibility standard, the complaint must contain more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

## II. Analysis

This case bears striking similarities to another recent case in which a defendant school district's motion to dismiss was denied. In *Bussell v. Elizabethtown Indep. Sch. Dist.*, No. 3:17-CV-00605-GNS, 2018 WL 1997547 (W.D. Ky. Apr. 27, 2018), the Honorable Greg N. Stivers denied a motion to dismiss filed by Elizabethtown Independent School district, finding that the plaintiffs sufficiently alleged that the school district was liable for unreasonable searches and seizures and for violations of Title IX. That case involved very similar parties (adult female plaintiffs bringing claims on behalf of themselves and a putative class, versus Stephen Kyle Goodlett and a school district as defendants), nearly identical claims, and very similar facts.

Indeed, apart from the sections dealing with the school district cell phone policies, a paragraph on negligent hiring in this case, and a few factual distinctions, the complaints are largely identical.

In both cases, the complaints assert claims for violation of the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983; violation of Title IX of the Educational Amendments of 1972 (20 U.S.C. § 1681(a) *et seq.*); violation of Article I, Section 10 of the Kentucky Constitution (Kentucky's counterpart to the federal Fourth Amendment); and several theories of school district liability.[1] In both cases, the complaints allege that over a period of multiple years, Defendant Goodlett (who was first a teacher at a public high school operated by the defendant school district in *Bussell*, and subsequently became the principal of a public high school operated by the defendant school district in this case) confiscated the female Plaintiffs' cell phones pursuant to school district policies, searched the phones without any reasonable suspicion, found nude photographs of the then-minor Plaintiffs on the phones, transferred them from the phones, and uploaded them to the Internet.[2]

Both complaints allege that the school district is liable for Goodlett's behavior because he acted under color of the authority vested in him by the school district and had final decision-making authority with regard to the confiscation, retention, search, disposition and/or return of student cell phones and their contents pursuant to school district policy; that Goodlett's actions were known to other administrators and personnel at the school consistent with a custom of tolerance or acquiescence of such impermissible searches; that the school district failed to

---

[1] The complaints also assert state law claims for invasion of privacy, outrage, and libel, but – as in *Bussell* – the Plaintiffs have clarified that the state law tort claims are brought only against Goodlett. *Bussell*, 2018 WL 1997547 at *1, n.3; [R. 14 at p. 14].

[2] As in *Bussell*, the parties appear to agree that Goodlett's actions were illegal. *Bussell*, 2018 WL 1997547 at *1, n.2; [R. 1 at p. 7, ¶24; R. 9 at p. 7].

develop and enforce adequate policies and procedures governing the confiscation, custody, and control of student cell phones; that the school district failed to train its officials and administrators, including Goodlett, as to the proper procedures for, and legal limitations on, confiscation, custody, and control of student cell phones; and that the actions and failure to act of the school district constitute deliberate indifference on its part. In response to the complaints, each defendant school district filed a nearly identical motion to dismiss, arguing among other things "that it is entitled to immunity, cannot be vicariously liable for Goodlett's actions, and did not have a legal duty to implement policies to prevent Goodlett's unforeseeable criminal conduct." *Bussell*, 2018 WL 1997547 at *3. Judge Stivers rejected the school district's arguments and denied the motion to dismiss.

While this case does differ from *Bussell* in a few material respects, the Court finds that these differences do not alter the conclusion reached in that case, and that this motion to dismiss should be denied under the same logic. First, this complaint contains an additional theory of school district liability (failure to adequately screen Goodlett's background and other relevant history before hiring him). [R. 1 at p. 16, ¶68] In response, the district argues that the Plaintiffs' negligent hiring claim "is without basis in law or fact," and is a "blatant disregard for the pleading standard," because "Defendant Goodlett had worked in other school districts throughout Kentucky without incident, and the District did perform a background check on him in this case as is required by law." [R. 9 at p. 14] But it is the district's argument which demonstrates blatant disregard for the relevant standard, since it argues the facts despite the established standard of review for a motion to dismiss, where "the Court presumes all factual allegations made in the Complaint are true." *Bussell*, 2018 WL 1997547 at *5 (citation omitted).[3]

---

[3] The Court notes that even if true, the facts which the district asserts would not be inconsistent with liability for negligent hiring: Goodlett could have worked in other school districts without being properly screened or having a

Just because the district *should* have conducted a background check on Goodlett under state law does not mean that it *did*, and is certainly no reason not to take as true the Plaintiffs' allegation that the school district did not adequately screen Goodlett's background and other relevant history.

Second, the school district's motion to dismiss in this case contains an additional statement regarding Title IX liability. Both motions state that the cell phone policy, "as written, applies to all students, male and female, and makes no distinction between sexes." [R. 7 at p. 8, *Bussell*, 2018 WL 1997547 (No. 3:17-CV-605-GNS); R. 9 at p. 8] In addition to that statement, the motion to dismiss in this case also states that "[t]he Plaintiffs are well aware that the Policy made no distinction among students and their use of cell phones on school property on the basis of sex" because the Plaintiffs quote the policy in their Complaint. [R. 9 at p. 8] However, this additional statement does not substantively add to the argument that the written policy contains no sex-based distinction, and thus this statement does not provide a basis to distinguish the opinion in *Bussell*. The Court finds that here too, notwithstanding the lack of a sex-based distinction on the face of the cell phone policy or the search policy, and "[n]otwithstanding the irrelevant allegation regarding what 'should have been known' . . . when the factual allegations in the Complaint are assumed to be true, Plaintiffs have alleged enough facts to allow the Court to draw the reasonable inference that the District is liable for the misconduct alleged" under Title IX. *Bussell*, 2018 WL 1997547 at \*6.

Finally, the cell phone policy in *Bussell* was somewhat different from the cell phone policy in this case. The cell phone policy in *Bussell* provided in relevant part:

---

proper background check at all, and the district does not show that the fact that the district performed *a* background check would necessarily mean that it performed a *sufficient* background check.

> [W]hile on school property or attending school sponsored or school related activities, students shall be permitted to possess and use personal telecommunications devices (cell phones) provided they observe the following conditions:
>
> 1. Devices shall not be used in a manner that disrupts the educational process, including, but not limited to, posing a threat to academic integrity or violating confidentiality or privacy rights of another individual, unless an emergency situation exists that involves imminent physical danger or a certified employee authorizes the student to do so. *Otherwise, devices shall be turned off during regular school hours. (7:00 a.m.-2:30p.m.)*
>
> Students violating this prohibition, will be subject to the following disciplinary action. 1st offense is a 3-school day confiscation; 2nd offense is a 10-day school day confiscation; 3rd offense is for the remainder of the school year. In addition, an administrator may confiscate the device, which shall only be returned to the student or the student's parent/guardian, as appropriate.
>
> ...
>
> 3. Students shall comply with any additional rules developed by the school concerning appropriate use of telecommunication or other electronic devices.
>
> 4. Students shall not utilize a telecommunication or similar device in a manner that would violate the district's Acceptable Use Policy or procedures or its' [sic] Code of Acceptable Behavior and Discipline.

*Bussell*, 2018 WL 1997547 *4. Here, the cell phone policy provided as follows:

### CELL PHONE/Media Device POLICY

> Cell phones/Media Device may be permitted at school and on school property.
>
> Cell phones/Media Device must remain in a student's pocket, purse, locker or backpack between the hours of 8 AM and 3:10 PM.
>
> Any cell phone/Media Device seen between the hours of 8 AM and 3:10 PM will be confiscated by a school or district staff member.

Whenever a student's cell phone/media device is confiscated, the following actions will occur:

All Incidents
> The student's cell phone will be given to school administration and will be returned based on the policy outlined below. The student's parent may be contacted by phone or e-mail. The incident will be entered into the student's discipline file, and a warning will be entered on first offense and subsequent events are open to additional discipline if needed.

1st Incident
> The phone will be held until the end of the school day. Do not ask to leave class before the bell rings. Phones will not be handed out until 3:10pm. If the phone is confiscated after the beginning of 4th period the student will be asked to submit the phone to administration the following day for one full school day.

2nd Incident
> The phone will be held for three days. It will be returned to the student at the end of school on the 3rd day.

3rd Incident
> The phone will be held for seven days. It will be returned to the student at the end of school on the 7th day.

4th Incident
> The phone will be held for seven days. It will be returned to the student at the end of school on the 7th day. However, the student will be asked to submit the phone each morning, to be held by the administration during school hours, for the remainder of the school year.

### Additional Notes

Anyone loaning a phone that gets confiscated is taking the chance that the phone will be held by the administration for a period of time.

> Example: If Student A loans a cell phone to Student B and Student B gets the cell phone taken away as his/her third offense, Student A's cell phone will be held for the remainder of the semester, and Student B will serve 2 days of ISS.
>
> If a student refuses to relinquish the cell phone to a school or district staff member, the parent will be contacted and suspension can occur.
>
> The staff of LaRue County High School is not responsible for cell phones that are brought to and/or confiscated at the school.

[R. 1 at pp. 4-5, ¶10 (emphasis original)]. However, while the cell phone policies differed somewhat, the search and seizure policies are exactly the same in relevant part[4]:

> **REASONABLE SUSPICION**
> No pupil's outer clothing, pockets, or his or her personal effects (e.g., handbags, backpacks, etc.) shall be searched by authorized school personnel unless there are reasonable grounds to believe the search will reveal evidence that the pupil has violated or is violating either a school rule or the law....
>
> **AUTHORIZED PERSONNEL**
>
> Searches of a pupil's person or his or her personal effects shall only be conducted by a certified person directly responsible for the conduct of the pupil or the Principal/designee of the school which the student attends.
>
> ...
>
> **OTHER DISRUPTIVE ITEMS**
>
> Items which may be used to disrupt or interfere with the educational process may be temporarily removed from the pupil's possession by a staff member. Such items may be returned to the pupil by the staff member or through the Principal's office.

*Bussell*, 2018 WL 1997547 at *4; [R. 14-1 at pp. 1-2].

---

[4] Just as Judge Stivers considered both the cell phone policy included in the Defendant's Motion to Dismiss as well as the Search and Seizure Policy attached to the Plaintiffs' Response to the Motion to Dismiss in *Bussell*, for the same reasons the Court will consider the Search and Seizure Policy of Larue County Schools, Policy 09.436, attached to Plaintiff's Response to Defendant's Motion to Dismiss, along with its cell phone policy as quoted in the original Complaint. *See Bussell*, 2018 WL 1997547 at *2 (citation omitted).

The *Bussell* court found that "[m]aking all reasonable inferences in favor of Plaintiffs . . . the two policies, read together, could have led a teacher to believe he was permitted to search a student's cell phone if he had 'reasonable grounds to believe the search [would] reveal evidence that the pupil ha[d] violated ... a school rule[,]' including [the high school's] prohibition on cell phones being used during school hours" and that "[w]hether Goodlett's actions were illegal or not does not alter the question of whether the District's policies, training, and supervision allowed him to take them." *Bussell*, 2018 WL 1997547 at *5 (quoting school district's search and seizure policy). The same is true here. Each cell phone policy requires devices to be turned off (in *Bussell*) or put away (in this case) during specified hours, and each policy allows school administrators to confiscate a student's cell phone for violations of this rule, with progressively longer periods of confiscation for each subsequent offense. The Court finds that the cell phone policies are sufficiently similar that the same analysis applies to each set of school policies regarding cell phones and search and seizure.

### III. Conclusion

For the reasons discussed above, the Court finds that the reasoning outlined in more detail in *Bussell* applies equally to this case, and that the few distinctions in this case do not alter the outcome.

Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Defendant LaRue County School District's **Motion to Dismiss Plaintiffs' Amended Complaint [R. 24]** is **DENIED**.

May 15, 2019

cc: Counsel of Record

*Claria Horn Boom*

Claria Boom, District Judge
United States District Court